United States Court of Appeals for the 11th Circuit. Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning. This is our final day of oral argument this week. We only have two appeals to hear this morning, both raising a similar issue, although one of them raises an additional issue. Counsel, as you've been before us before, you know the drill. We're familiar with your cases and your briefs and the authority cited in your briefs and at least the portions of the record that are relevant this morning. In the limited time available to you, you should feel free to get straight to the heart of your argument. We're probably going to have some questions. If you're answering a question from the court when you when your time expires, feel free to continue and finish your answer, but do be mindful of the clock and our time. We will begin with United States v. Innocent. Mr. Lopez. Good morning, Mr. Chief Judge, Judge Joe Flatt, Judge Hull, and please the court. With the United States v. Moore and the effect that that has on the issues that are raised in this appeal, we would concede that under United States v. Moore, the RAHEF errors that we have brought up do not deprive the District Board of Jurisdiction. Those errors are not structural. They are in fact subject to harmless error analysis and to plain error review. Moore also makes clear that RAHEF issues are in fact errors that are plain, and that really the court would agree, the third prong of the plain error analysis, and that's whether the errors complained of really affected Mr. Innocent's substantial rights. Moore also instructs that in making that determination, the court should look to the entire record, not just what was presented at trial. But before I get to the facts, I just want to make sure, just to go over the standard on that, whether something affects a substantial right, we bear the burden of demonstrating that there's a reasonable probability that but for the error, there would have been a different outcome in the case. And a reasonable probability is a probability sufficient to undermine the confidence in the outcome. So I'll go with the facts. And I think in this case, the facts really have to start with the stipulation that was entered into between the United States and Mr. Innocent at the trial level. Mr. Innocent in the United States was stipulated to two historical facts. Historical fact number one, Mr. Innocent was convicted of a felony and he was convicted of a felony prior to possessing his firearm. Historical fact number two, his civil rights had not been restored by the state of Florida. And that would be again, at the time that he possessed the firearms. So what facts are there in this case that would serve to undermine confidence in the outcome when put together with a rehafe issue? In this case, sadly, we have a defendant who has a low IQ that is made evident that sentencing there was a sentencing memorandum filed. It was actually a report by a psychologist filed under seal. So that is part of the records. We have a defendant with a very low IQ, who has never stepped foot in a prison. He does have four felonies. And with the court's indulgence, I'd like to just go over those four. Oh, Mr. Lopez. Um, yes. So he, even though he was sentenced to prison, I thought he had, he had, so he has four prior conviction, five felony convictions, right? On three separate occasions. Is that right? Yes, I believe it would be four separate occasions. Okay. It's four separate occasions. Um, so, um, I thought he had been twice sentenced to 364 days in prison. Uh, am I mistaken about that? Uh, you're partly correct, Your Honor. He had, uh, been sentenced twice, and this is a paragraph 36 and paragraph 39 in the distribute cocaine. Uh, this was when he was 32 years old. He entered a no contest plea to both. He was adjudicated guilty as to both. And he was sentenced to 364 days credit for time served 161 days. The magic thing about it, he actually did serve prison time, right? He served time, but it was not prison time. The magical thing about in state is you do your time in county detention. You never go to federal to state prison. I'm sorry. Yeah. So your, your point is that he had not been to a state prison. He had been to a county jail. That's correct, Your Honor. And if you look at some of the other things he's involved, so those are the four felonies. Uh, there were two when he was 20 and 21. And then these two, which are probably the most important ones, uh, paragraph 36 and 39. Uh, they look before you move on. Can I ask you a question? You said 161 days credit for time served. So after he entered his, uh, no contest plea, he still had some more time to serve on the 364 or did they just do credit for time serve? And that was it. I believe, uh, the way it would work would be he would, he would still have to do additional time. And the additional time so after he pled and after he was sentenced, he got a 364 day sentence, but he had 161 days credit. So he served the balance of that afterwards, but you're saying in the county jail, that's correct, Your Honor. And yeah, because they don't take somebody over a year that George is kind of the same thing. Uh, because by the time you get there, you get out. That's correct. And that's the magic happens a lot. Release you because they don't have room for you. That's correct, Your Honor. So technically I think he probably would have done how many 364 days sentences does he have? Does he have one, two, three? He has two and that's paragraph 36 and 39. And it looks like they were committed on separate occasions, uh, but they were resolved on the same day. So it looks like the same day he got sentenced. Those two were actually, even though they're technically two sentences, they were to run concurrent. So it was one sentence. So he, he had one sentence for those two offenses, 364. That's why I said, that's why I said four convictions on three separate occasions because those convictions were entered together. Those sentences were at least entered together, right? That's correct, Your Honor. Okay. And what are the other two? Those are paragraph 28 and paragraph 30 in the pre-sentence report. This is when he was 20 and 21 years old. Those were for possession of cocaine, simple possession, not, not with intent to, um, to, to distribute. Um, he entered no contest plea to both. Uh, adjudication was withheld and he got 18 months, uh, of probation. So not even jail time, just 18 months of probation. Let me let, so let me make sure I've got your argument here. I appreciate, especially the way you started, uh, this morning, Mr. Lopez. Um, and clearing out the underbrush and getting to the heart of the matter, uh, and recognizing that, uh, it's your burden to establish a reasonable, reasonable probability of a different outcome. Uh, and, and you said you wanted to focus on the facts that you think, uh, undermine confidence, um, in the result. And, and you, you pointed to your client's, um, low, um, IQ, uh, and the fact that he had not served time in a, uh, state prison. Uh, he's only served time in, uh, in a, in a jail. Um, but is that it? I mean, he has four, he has four felonies, two of which were, he was sentenced to a day shy of a year. Um, are those the two best facts you have in terms, or are there any additional facts in terms of undermining, um, confidence in the outcome here? Well, in comparison to some of the cases, for example, the Moore case, there was an unpublished, uh, Paul decision. Um, all those defendants. And I think the defendants that this court has previously rejected by hate claims have been previously convicted of being a felon in possession. And I agree with you that your case is closer than a lot of the ones that we've dealt with, um, earlier. Um, and, and, and, and if this had been a preserved error, um, I think, uh, I think Mr. DeRosa would have a much harder time, uh, this morning. Um, what, what, what I think this is, you know, closer, but, but I do wonder if it's four prior felonies, two sentences of 360, 364 days, a lengthy term of probation on another conviction. Um, the bet that all we really have left is low intelligence and he's not been to a state prison, uh, and not served more than a year. Right. The other thing I would, I would bring to the court's attention, if you look at his record, and I think Mr. DeRosa is correct in saying he's got a lengthy record. Um, some of the other offenses that are scattered within there are misdemeanors, traffics, but if you look at the way that they were dealt with and just look at, at the ones that surrounding the paragraph 36 and 39, you have paragraph 37, which was a misdemeanor. Um, he went to County jail again, every time he pleads no contest, he was adjudicated guilty. He just got fined. Paragraph 38, another misdemeanor, pled no guilty. He got 121 days in jail. He had been in jail for 121 days. So he got a pretty lengthy sentence for a misdemeanor. Here's my concern, and I'm just going to raise it so you can tell me the, uh, why it shouldn't be a concern. As we all know, having tried all these often, that they stipulate to, I'm a felon because they don't want the jury to know, uh, one, but the felony was, or that I have four felonies. Okay. And, uh, so I think we have to put into this equation, and you can tell me why I'm wrong about this, but if you were to go, you talk about a reasonable, a probability reason outcome, this jury, if the government's got to burden to prove this at trial, what the government's going to do is put in all four felonies. Okay. Because they'll have the burden to show and show what he proved and show the documents. I don't know what they exactly will do, whether they'll, um, just put in the no contest plea or what have you. So first question, can't I look at that? I mean, at a reasonable probability of a different outcome. If you go back and try this thing again, you know, and then they're going to see all four felonies and he's going to be saying, no, I didn't know I was a felon and I was on probation twice. And my probation officer never told me it was a felony. I, I, I'm not trying to be difficult. I'm just trying to be realistic. No, it's, it's a very good question, your honor. And, but I, I don't know of any case in this, again, you're, you're looking at, um, the record as a whole, as it is combined that with the rehafe error. And I think that's the standard. I don't know if the court can then speculate as to what's going to happen on a retrial to determine whether that affects us. If the government's got to prove it, they got to prove it. That's right. And, and, and I, The record makes clear that it's four felonies. You don't contest that. So, I mean, the government clearly would be able to tell the jury about the four felonies, right? Even taking that into effect, your honor, I think if you look at the record as a whole, you have somebody with this very low IQ, somebody who from the record looks like he has a substance abuse issue is in and out of county jail, pleads guilty to traffic and misdemeanor, get some time, always pleading no contest. He's never pled guilty. Mr. Lopez. Yes, sir. What is the significance of the fact that he didn't go to a prison in terms of what he was convicted of drug offenses. So he obviously knew that was wrong, seriously wrong. I mean, I don't care about the IQ, I understand the IQ, but he must have understood that drug trafficking is very wrong. And so he may not know the difference between a felony and a misdemeanor by definition. So I don't think he needs to know that. Because you'd run into all kinds of problems that way. But my point is, it was terribly wrong what he did. And I don't understand why not going to prison and serving that time in the jail is relevant. You know, I think the basic street understanding is, if you go to prison, you're a felon. If you stay in county court, you're a misdemeanor. And I think that's just why do you say that? Should we take additional notice of that? No, no, not at all, Your Honor. How do we know that? I think you can just look at his record, and see that these felonies, you know, they're felonies, and they're serious. Yes, they were treated not very much differently than the misdemeanor, or even the traffic offenses. He's sitting in jail in county jail. He comes up, pleads no contest every single time, gets a certain amount of time in county jail or gets credit for the time he spent in county jail and steps out. It's a rare case, you get 364 days in prison on a misdemeanor. Maybe one in 100. It depends on the judge, Your Honor. Do they have a probationary term following the 364? I don't believe so, Your Honor. It does not say on the on the pre-sentence report. The government did put in, I believe, one of those felony convictions. I think it's Government Exhibit 31. I don't believe that has any probation either. Government Exhibit 31 would Okay, you've gone four and a half minutes over, but that's fine. No, no, no, no, no. You've been answering our questions, so you've saved your time for rebuttal. Don't worry about that. Unless one of my colleagues has another question, I was going to suggest that we hear from Mr. DeRosa. Thank you, Your Honor. I'll go ahead and mute myself. Thank you, Mr. Lopez. So, Mr. DeRosa, good morning. Good morning. May it please the court, Philip DeRosa on behalf of the United States. The government concedes that there was plain error under Rahif, but we do not believe that the error affected the appellant's substantial rights. But before addressing the effect on the appellant's substantial rights, we're asking the court not to notice or correct the error in this case because the appellant waived the argument that but for the error, the outcome of his trial would have been different. He didn't raise that argument in his opening brief. He didn't respond to it at all in his reply brief after I had raised it in my answer brief. He's raising it for the first time here this morning on oral argument. Now, up until now, he had ignored the outcome test, which is the law of this court under Moore, Reed, and McClellan, and he staked his claim on the Fourth Circuit's Medley case, which dispenses with the outcome case and says that the Rahif error creates a non-offense that automatically results in a prejudicial effect on the appellant's substantial rights. You know, this is, if we review this, it's going to be for plain error, and you've said that this was a waiver. It's really a forfeiture, isn't it? We don't have anything on the record where he has evidence in an intentional relinquishment of a known right, do we? I agree that he hasn't come around and said that, but it seems to me that he's made a strategic choice. He's using the Medley case to try to set, because he sees a circuit split, and he wants to preserve that issue for some Supreme Court argument. Yeah, but I don't see what real difference it makes in terms of some kind of sandbagging. The record is what it is. I'm saying that there's no dispute, and that those kinds of strategic decisions that he made, they should have consequences, and he's never said. Mr. DeRosa, how was it a strategic decision? How has he benefited by just belatedly raising this argument? Because he's never said that, but for the Rahif error, that his outcome would be different. He just did. Yes, he just did for the first time this morning, and that's why we're asking the court not to notice or correct the error. That's his position, though, all along, that the case ought to be reversed because there's plain error. Is it implicit in that? No, no, sir. Why not? Because he's talking about a different kind of plain error. If you read both of his briefs, he's only talking about plain error in the context that Rahif has created what he calls, what the Medley case calls, a non-offense. It has absolutely nothing to do with the fact that he tried to make— There's a difference between raising an issue and making an argument in support of that issue. It seems to me that insofar as he raised a Rahif issue and the case law has developed in a way that has undercut some of his earlier arguments in support of that issue, it doesn't change the fact that the issue itself is preserved, right? I don't think the issue that he raised here for the first time in an oral argument this morning has been preserved. No, sir, I do not. Well, let's just say we're going to disagree with you about that, Mr. DeRosa. Even if you were to excuse the waiver, we believe that there's enough in the entire record to show that the outcome of trial would not have been different but for the lack of knowledge of status element in the indictment. No, and you've actually formulated it in a way that's more favorable to him. I think that the question for us is, has he shown that there's anything in the record that would show a reasonable probability of a different outcome for him? Not that the record shows that there's not a reasonable probability of a different outcome, right? Of course, he hasn't met his burden, but I'm just going to tell you why he hasn't met the burden because if you look at the entire record, you'll see that there's no way that he can satisfy his burden, and that begins with the stipulation that he made at trial, and in his oral argument- He stipulated that he was a felon. He didn't stipulate that he knew he was. That's true, but he also stipulated- That's just a legal position that his lawyer took. That has nothing to do with whether or not he knew he was a felon at the time of the offense. That's true. All right. He did more than just stipulate that he had been convicted of a felony offense. He also stipulated that prior to the time that he possessed the firearm- Whether he stipulated it or not, we know that he knew that he was convicted of the drug offense. That's obvious. To me, it's obvious. Yes, sir. It seems to me that the important thing about the stipulation is that it's circumstantial evidence that he knew that he was a convicted felon, and Rahafe says that knowledge can be inferred from circumstances- Well, and the real question is, is there any evidence, circumstantial or direct, that he did not know he was a felon? That's the real issue, isn't it? If that's the real issue, then the answer is clear. There's no evidence that shows that he did not know he was- He says he's low intelligence, that he served less than a year, always in jail, and that's enough to undermine confidence in the outcome. I don't think it's enough. It's true this case is an outlier because this is probably the only case I've seen where the defendant has not either been sentenced to or served more than a year in jail. Let's talk about this low intelligence. What's the significance of more than a year? I have a hard time with that. Let me tell you why I have a hard time. He's convicted of drug trafficking, which is a very serious offense, and you could almost take judicial notice that the world knows that. As a matter of fact, in success of it, it was not four times in one. He knows he's been convicted of a very serious matter. He may not know the difference between a misdemeanor and a felony. I speak for myself. I don't think that's relevant, whether he knows what a felony is, of the legal definition of a felony, but he knows he's committed a very serious offense that could put him in jail. I'm sure he had a lawyer. The lawyer probably told him that he couldn't do time in prison, and I'm sure the probation officer, in the case in which he was put on probation, explained to him about drug trafficking and not doing any crimes as a condition of probation. Of course, that's not in the record, but I think we can assume that. I appreciate all the assumptions you're making, Judge, but to be honest, Rahafe says that the government has to show that he knew that he was convicted of a felony. The question is, how does somebody know when he's convicted of a felony? Yeah, and so, Mr. DeRosa, that's an important point. I have to, I think, have some disagreement with Judge Chauffat, and I think you're expressing the same disagreement, but I want to make sure. In my view, it does matter whether the defendant knew whether it was a misdemeanor or a felony, because following Rahafe, the government has to prove that he knew he was a felony, right? I think that's true. Absolutely true, Your Honor, but what I'm trying to concentrate on is the fact that circumstantial evidence is important to be able to show that you can draw a reasonable inference that he knew by the evidence that was in the record, not only the stipulation that he made at trial, but the record as a whole, and when you talk about this low intelligence business, he might have low intelligence because he didn't get a high school diploma, maybe he got a GED, but for half of his 36 years, he's been in and out of the criminal justice system. He's got eight misdemeanors and four felonies, and it seems to me that this court can draw a reasonable inference that someone with his experience in the criminal justice system is likely to know the difference between a felony and a misdemeanor, especially when two of those 64 days, and two of them, which were also consolidated, the other two felonies which were consolidated for sentencing, he got 18 months probation, which obviously 18 months is more than a year. So when you look, and this is not even to speak of the fact that he has never objected to any of his felonies in the PSI, and he's never said that he didn't know he wasn't a convicted felon. You take all that, and what you're left with is the inference that he knew, based on the circumstantial evidence, and we believe it's enough for you. Do you think, when we look at the stipulation, I'm not sure you get much from the fact that he says I am a convicted felon, but you have a further sentence there, his rights to possess a firearm have not been restored. Is there any, when you talk about, is there any inference from that, or is that neutral to Mr. DeRosa can be prepared on that? There's three things in this stipulation. There's the fact that he says that he was convicted of a felony. Second, he says that prior to the time he possessed the weapon, he had been convicted in a court of a crime punishable by imprisonment for a term in excess of one year. That is a felony offense. Then three, he says his rights to possess a firearm or ammunition had not been restored pursuant to Florida law. That's three parts of the stipulation, and they're not neutral because when you take those three parts, it makes it a stronger inference that he knew. Well, I have a question. I really wonder how strong that inference is, whether it's any stronger than just the fact that he had been convicted of a felony, because it does not seem to me that any of those three parts of the stipulation go to his knowledge when he committed the offense. They are stipulations that as of the time of his adjudication of guilt and sentencing, that he was a felon and the other facts that you just outlined, but they don't say anything about his knowledge earlier when he committed the offense, do they? I think they do in an indirect way, and I'll tell you why, because he is saying, okay, I'll admit I was convicted of a felony. That doesn't really say a whole lot in and of itself about whether I knew I had been convicted of a felony, but when you start adding these other facts about you're admitting that you've been convicted of a crime punishable by imprisonment for in excess of a year, that's the point where the defendant stops and says, wait a minute, you're telling me that that's true, but I never knew. He knows that now, but that's all it tells us is that he knows that now. I'm telling, I'm saying that it should have precipitated. I have a point here. It should have precipitated. Let's hear from Judge Chauffat has a question. I have a point, then you can comment on it, Colleague Jim. The first question is, when he stipulated that he was a felon, which is an element of the crime, whether we can assume that his lawyer had to explain to him what that meant, because in other words, it's like a guilty plea. It's a knowing waiver of a trial, on the point. So from a legal point of view, when he stipulated, he's saying, I understood that at the time of the crime, I was convicted of a felony because that's what the lawyer would explain to him. We assume, and there was this question of when did we make that assumption? Because I believe that he could not stipulate to an element of a crime without knowingly and voluntarily knowing that in the same way in which he'd make a guilty plea. I just threw you a softball. Yeah, you did. As much as I love your assumption, I'm not sure that we can assume that the lawyer explained to him. No, but that would be, no, but he, no court could take a stipulation, in my view, to an element of a crime without being satisfied that it was a knowing and voluntary stipulation. It's like, let's put it this way, it's like a partial guilty plea. Why isn't it? I don't know if we can make that- But the reason, well, let's put it this way. There's no reason to stipulate the prior felony unless it's relevant. Would you agree with that? Yes, sir. Okay. Which means it was at the time of the offense, I knew. I was convicted of, I had been convicted of a felony. Yes, sir. Okay. And I am knowingly and voluntarily making that statement to the court now. I think that's the inference that you can draw from that. Well, to me, that's the only way the stipulation becomes relevant. Of course, the law in our circuit was, at the time that this occurred, was that he does not have to, that the government did not have to prove, although our law was wrong. The law actually was something else. Our presidents misunderstood the law, right? Your honors, if you have no other questions, then I'll finish. I'm done. Thank you. Okay, Mr. DeRosa. We appreciate that. Mr. Lopez, you've got five minutes. Mr. Lopez, you're still on mute. Thank you, your honor. Not the first lawyer to do that this week. It's been a comment. Mr. Lopez, what do you say to what my observation just I've made to your colleague? Yes, sir. And I think it's a very valid observation. The thing is the timing of it. So, I think the trial attorney here would have explained to Mr. Innocent by stipulating, you are stipulating to this historic fact that you were convicted of a felony. Not stipulating, but at the time of the possession. It wouldn't be relevant. It wouldn't be relevant unless he knew about it. Do you agree with that? Yes, he would know about it at the time of trial. No, no, no. At the time of the offense, stipulating at the time of trial, that in retrospect, without knowing what I was doing, I agree I committed a felony. But that doesn't become relevant unless it's knowing. Do you agree with me? Actually, at the time that the stipulation was made, where the law was, it wouldn't be relevant. Well, we're taking the law the way it is now, let's say. Whether it was then or not, the stipulation was a piece of evidence that was highly probative, all I'm saying, at the time. Yes. That's correct. You know, and just to go flat, I think one of the problems with this is, you know, we as criminal defense attorneys usually work for the maxim that mistake of the law is not a defense. But I think Rahafe talks about that. And this is at page 2198, 139 Supreme Court Reporter. Rahafe talks about that. And so it says, yes, that that maximum usually does apply. But it doesn't apply when this collateral matter goes to the mens rea. And so just to kind of paraphrase it, because there was a immigration case, a defendant who does not know that he is, and I would say at this point, a convicted felon, does not have the guilty state of mind that the statute's language and purpose require. And that's the point here. Not that he had been convicted. Would you agree with me, Mr. Lopez, that most people convicted of a felony know that they're felons? Your Honor, based on my experience in state court. How about when they've repeatedly been convicted of felonies? I think if you look at the record of Mr. Kate and Mr. Innocence case, look at those priors and misdemeanors, along with the felonies, the way that they were disposed of, the misdemeanors and the felonies. His basically it is a turnstile. He's in court. He's out of court. He plays no contest every time he does sometime in county jail, and then he gets let out. I don't think any of that would have raised the same the same red flag as going to state president. Would you agree that that kind of offense that he was convicted of would make a difference? It's a serious offense. What could be some technical defense of whatever? This is a drug offense. Do you think that makes a difference? Whether somebody knows he's a felon, do you think he's been convicted of a drug offense on four occasions is relevant? I think it's relevant. I think it's relevant. But what's also relevant is he's also been convicted of misdemeanor drug offenses. And I think somebody with a low IQ. Your best argument is he didn't go to prison. That's one of my arguments. The other argument that I would bring to the court is really the standard, the legal standard that this court has to look at. And I think that's where Mr. DeRosa was wrong. This isn't a separate legal issue. It's the legal standard that the court has to engage in. And here you have this confluence of harmless error analysis and plain error analysis when you're talking about a conviction. And the law in this circuit is clear that in those cases, that error is harmless when it is clear beyond a reasonable doubt that a rational jury would have found that that's constitutional. That's constitutional error. And that's and that's where the error has been preserved. You don't have that. This is a burden, as you acknowledged at the beginning of your argument. This is a plain error case. The burden is on you. And it's the flip that that's that's to me, the nut of it and the problem for you, Mr. Lopez. Well, even under that standard, your honor, really, it's is there a reasonable probability and the standard is not more likely than not. And we're talking about the plain errors. No, it's kind of undermined the confidence of the outcome. I just not sure what in this record really suggests that your client would not have known he was a felon. Well, actually, the record, it would be that would a jury find reasonable doubt as to whether he knew he was a felon. And I think the record as a whole, and including his low IQ, never been in prison, all his criminal records, including misdemeanors, felonies, traffic were disposed of the same way. Nothing that would really kind of put a red flag to him. This is something different. And I appreciate the court's time. Oh, no, we appreciate your time. This is a very helpful argument. Thank you both. And we'll move to the next case. Thank you.